24187

In the Matter of Jerry W. CRAIG, Respondent.
(454 S.E. (2d) 314)

Supreme Court

*Atty. Gen. T. Travis Medlock, Deputy Atty. Gen. William K. Moore,* and *Asst. Atty. Gen. James G. Bogle,* Columbia, *for complainant.*

*Justin O'Toole Lucey,* Mount Pleasant, *for respondent.*

Submitted Nov. 28, 1994.

Decided Jan. 23, 1995.

*Per Curiam:*

In this attorney grievance matter, respondent admits he has committee ethical violations and consents to a definite suspension pursuant to Paragraph 28 of the Rules on Disciplinary Procedure, Rule 413, SCACR. We accept respondent's admission and suspend him from the practice of law for a period of fifteen (15) months, retroactive to December 20, 1993, the date respondent was temporarily suspended by this Court.

### The Chepenick Matter

Respondent was retained by the Chepenicks to handle the refinancing of a mortgage on their home. The loan proceeds from the refinancing were deposited into respondent's trust account. Respondent subsequently issued a check on the trust account payable to Barclays American Mortgage in the amount of $116,018.82 to satisfy a prior mortgage. The check was twice returned by the bank for insufficient funds. Respondent's title insurance company, First American Title Company, paid off the mortgage and sought reimbursement from respondent. Respondent paid $24,000 to First American, and subsequently agreed to an out-of-pocket settlement with First American in satisfaction of a civil action it brought for the balance due.

Respondent admits his negligence in the management of the trust account and his failure to properly supervise his employees and to maintain proper accounting procedures.

### The Turner Matter

Susan Goodman Turner hired respondent to represent her to collect a debt in the amount of $5,500.00. Ms. Turner paid respondent $1,500.00 in attorney's fees and $500.00 as costs. Respondent negotiated with the debtor and obtained a partial payment of $3,500.00. Respondent admits the balance of the debt remains uncollected. Respondent contends arrangements were made for the debtor to sign a confession of judgment for the remaining $1,500.00, but that he was unable to obtain the debtor's signature approving the agreement. Respondent has returned the $500 that Ms. Turner previously paid him to cover costs. Respondent admits his lack of diligence in this matter and his failure to avoid the appearance of impropriety. Respondent further admits that he failed to provide a written response to the Board of Commissioners on Grievances and

Discipline (the Board) as requested, and that he failed to cooperate with the Board in its investigation of this matter.

## The Lawson Matter

Paul Lawson, Jr., is a Registered Land Surveyor and Director of Technical Services for Ashley Surveying Company of Summerville, South Carolina. Respondent admits that he paid Mr. Lawson for several flood zone certifications which Mr. Lawson did not perform. Respondent denies any intentional wrongdoing and asserts that a member of his staff may have altered certificates without his knowledge in order to avoid a late real estate closing. Respondent states he has no other information or explanation for this problem. Respondent admits his negligence in supervising his employees, and further admits that he failed to provide a written response to the Board in this matter as requested.

## The Willard Matter

Respondent represented Kenneth Willard's ex-wife in several domestic matters since 1990. In 1992, respondent and another attorney agreed to an office-sharing arrangement. The other attorney had previously represented Kenneth Willard, but withdrew from her representation when she began sharing office space with respondent. Kenneth Willard subsequently appeared at a hearing without counsel because his attorney had withdrawn. However, respondent appeared on behalf of Mrs. Willard. Respondent denies that he agreed to cease his representation of Mrs. Willard, and states that his agreement with the other attorney was that they should not *both* keep representing the Willards. He further asserts that he consulted with the judge prior to the hearing as to a potential conflict and that the judge did not perceive one. However, respondent admits he failed to avoid the appearance of impropriety by documenting in writing what his arrangements were regarding former clients, and/or by terminating his representation of Mrs. Willard.

## The Galloway Matter

Don Galloway hired respondent to represent Don Galloway Homes, Inc., a real estate development company. Mr. Galloway alleged respondent overcharged him approximately $35,000.00

for title insurance policies by charging his company the residential policy rate on his construction loans. Respondent denies having overcharged Mr. Galloway for title insurance. However, respondent admits failing to avoid the appearance of impropriety by documenting the reasons he was using the residential rate instead of the construction rate. He also admits failing to timely respond to the Board's inquiries in this matter.

### The Jacob Matter

Barbara Jacob hired respondent in 1988 to represent her in her capacity as the appointed personal representative of the estate of Victor McClintic. The estate was not closed until 1994, and during that time bond premiums for the personal representative continued to accrue. Respondent contends some of the delay was caused by his difficulty in locating one of the heirs, who was due $1,300.00. Respondent states that once the heir was found, the heir would not cooperate in certifying payment so that respondent could close the estate. Respondent has received a waiver of the bond premiums from the insurer and reports that he has now closed the estate. Respondent admits his lack of diligence in responding to Ms. Jacob's inquiries and that he did not not return many of her phone calls. He further admits his failure to respond to the Board's inquiries in this matter.

### The Rhodes Matter

Mary M. Fender Rhodes hired respondent to represent her concerning allegations that her ex-husband had been mishandling her trust fund since their divorce. On five separate occasions, hearings were scheduled in the matter and then cancelled at the request of respondent. As a result of respondent's lack of diligence and delay, Ms. Rhodes' case was dismissed and she was ordered to pay $700.00 in attorney's fees to her ex-husband. Respondent admits that he cancelled several of the hearings for his own convenience. He has refunded $3,300.00 to Ms. Rhodes that she paid in attorney's fees and has reimbursed the $700.00 in fees which the court awarded her ex-husband.

### General Financial Irregularities

During the period January 1, 1992, through September 30, 1992, respondent's real estate trust account incurred 54 sepa-

rate charges for insufficient funds on deposit. On three occasions, the account carried negative balances. During the same period, respondent maintained a separate escrow account for non-real estate matters which incurred three separate bank charges for insufficient funds and showed negative balances on 14 occasions. Respondent admits he was negligent in the management of his bank accounts.

## Conclusion

Respondent has violated the following provisions of the Rules of Professional Conduct contained in Rule 407, SCACR: Rule 1.2 concerning scope of representation; Rule 1.3 by failing to act with reasonable diligence and promptness in representing his clients; Rule 1.4 by failing to keep his clients informed about the status of their cases and to promptly comply with their requests for information; Rule 1.15 by failing to properly safeguard and preserve the identity of the property of his clients; Rule 5.3 by failing to properly supervise his non-lawyer assistants; Rule 8.1 by failing to respond to the Board's requests for information; and Rule 8.4 by respondent's misconduct in delaying hearings for his own convenience, which resulted in prejudice to his client and to the administration of justice. Respondent has also violated Rule 413, SCACR, by engaging in conduct which bring the legal profession into disrepute.

It is, therefore, ordered that respondent shall be suspended from the practice of law in this State for a period of fifteen (15) months, retroactive to December 20, 1993, the date respondent was temporarily suspended from the practice of law by order of this Court. Prior to reinstatement, respondent shall, as agreed, place the sum of $20,000.00 in escrow with his attorney to pay for the investigation and/or restitution of any other accounting errors which may be discovered in the future. The deposit of this amount shall in no way limit respondent's liability in these matters. Any unused portion of the escrow account will be refunded to respondent two (2) years after his reinstatement.

Definite suspension.